## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN J. SIGG,                                    )
                                                 )
                        Plaintiff,               )
                                                 )          CIVIL ACTION
v.                                               )
                                                 )          No. 06-2436-KHV
DISTRICT COURT OF ALLEN COUNTY,                  )
KANSAS, 31st JUDICIAL DISTRICT, et al.,          )
                                                 )
                        Defendants.              )
_____)

### MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Under 42 U.S.C. § 1983 and the common law of the State of Kansas, John J. Sigg, *pro se*, brings

suit against the District Court of Allen County, Kansas, 31st Judicial District ("District Court"), Linda

L. Sigg, Steven B. Doering, C. David Newberry and Larry A. Prauser.  Plaintiff alleges that defendants

(1) deprived him of property without due process of law in violation of the Fourteenth Amendment

(Count I); (2) conspired to deprive him of property in violation of Section 1983 and Kansas common

law (Count II); (3) fraudulently conducted his divorce proceedings in violation of Kansas common law

(Count III); and (4) intentionally inflicted emotional distress in violation of Kansas common law

(Count IV).  This matter comes before the Court on the Motion To Dismiss Of Defendant The District

Court Of Allen County (Doc. #2) filed October 13, 2006, Defendant Linda Sigg's Motion To Dismiss

For Failure to State A Claim And For Lack Of Subject Matter Jurisdiction (Doc. #5) filed October 30,

2006, Defendant Steven Doering's Motion To Dismiss (Doc. #20) filed November 15, 2006, Defendant

C. David Newberry's Motion To Dismiss (Doc. #22) filed November 15, 2006 and Defendant Prauser's

Motion To Dismiss Plaintiff's Claim For Failure To State A Claim Upon Which Relief Can Be Granted

(Doc. #35) filed January 22, 2007.  For reasons stated below, the Court sustains the motions of the

District Court and Newberry, sustains the motion of Doering in part, overrules the motions of Linda Sigg and Prauser, and orders plaintiff to show cause why his claims against Linda Sigg and Prauser should not be dismissed for failure to state a claim on which relief can be granted.

### Legal Standards

Defendants seek to dismiss plaintiff's claims under Rules 12(b)(1) and (b)(6), Fed. R. Civ. P., for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). Defendants challenge the face of the complaint, so the Court presumes the accuracy of plaintiff's factual allegations and does not consider evidence outside the complaint. Id. Courts may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction. Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999). Plaintiff bears the burden of showing that jurisdiction is proper, see id., and must demonstrate that the case should not be dismissed, see Jensen v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993). Conclusory allegations of jurisdiction are not enough. Id.

A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

2

GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiff.  See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987).  In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Because plaintiff proceeds *pro se*, the Court will liberally construe his complaint.  See Jackson v. Integra Inc., 952 F.2d 1260, 1261 (10th Cir. 1991).  The Court, however, will not act as a advocate for a *pro se* litigant, see Kempf v. City of Colorado Springs, 91 Fed. Appx. 106, 107 (10th Cir. 2004), and "because a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, [] he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted," Hall, 935 F.2d at 1110.

## Factual Background

Plaintiff's complaint is summarized as follows:

John Sigg is a Kansas resident.  He married Linda Sigg on April 24, 1961, and they are parents of four grown children: Mitch, Dawn, Teresa and Kimberly.  Plaintiff is the sole proprietor of Sigg Auto Parts.  Linda Sigg kept the books and records for Sigg Auto Parts since the company's formation in the early 1980s and she altered its books and records.  Linda Sigg also kept the books for Sigg Motors, LLC, another business owned by plaintiff.  In December of 2000, plaintiff transferred 50 per cent of Sigg Motors to Mitch.  In December of 2001, plaintiff transferred the remaining 50 per cent to Mitch.

3

Linda Sigg filed for divorce in the District Court on May 14, 2001, and served plaintiff with divorce papers on January 16, 2002.  Linda Sigg hired Steven Doering to represent her in the divorce proceeding.  The day that Linda Sigg filed for divorce, Judge Timothy Brazil issued a temporary order which required plaintiff to give complete control of Sigg Auto Parts to Linda Sigg.  The District Court also granted Linda Sigg her normal monthly salary of $3,733.33.  Since the summer of 2001, Linda Sigg has funneled money and profits to family members, employees of Sigg Auto Parts, the District Court and Doering.

From July 9 to October 18, 2002, Robert Farmer represented plaintiff in the divorce.  On July 23, 2002, plaintiff filed a motion for a hearing to determine whether a conflict of interest existed between he and Doering because without his knowledge, Doering had represented him in a prior lawsuit.[1]  On September 5, 2002, Judge Brazil denied the motion to disqualify Doering.

On October 18, 2002, plaintiff fired Farmer and hired Hal Des Jardins to represent him.  On November 20, 2002, the District Court assigned Judge David Brewster to the proceeding.  On February 7, 2003, Des Jardins withdrew as plaintiff's attorney and plaintiff hired Glenn Casebeer.  On February 27, 2003, the District Court held a hearing on motions.  Linda Sigg appeared by telephone and through Doering.  Plaintiff did not appear in person or by counsel.[2]  At this hearing, Judge Brewster awarded Linda Sigg $10,000 a month in temporary support.  The District Court also added Mitch and his companies (including Sigg Motors) as third-party defendants and gave plaintiff 30 days to secure

---

[1]     Plaintiff alleges that he discovered the lawsuit in May of 2005.  This appears to be a typographical error, however, because plaintiff would have known of the lawsuit in 2002 when it was the basis of his motion to disqualify Doering.

[2]     Plaintiff alleges that Ed Bideau III, Mitch's attorney, falsified a fax to Judge Brewster indicating that plaintiff knew about the hearing and would not attend because he was not represented by counsel.

4

counsel.  On May 13, 2003, Linda Sigg hired Larry Prauser to represent her in addition to Doering.  On December 11, 2003, the District Court overruled Mitch's motion to dismiss.  On January 8, 2004, the District Court overruled plaintiff's motion to grant his divorce.  The District Court then ordered the parties to a settlement conference which never took place.

On April 6, 2004, the District Court ordered plaintiff to give $250,000 to Linda Sigg.  On April 12, 2004, Doering filed an order for plaintiff to show cause why the funds had not been transferred, and the District Court issued a bench warrant for plaintiff.  Plaintiff and his attorney were not informed of the bench warrant.  On May 20, 2004, plaintiff sought permission from the District Court to withdraw $250,000 from marital assets and moved for sanctions against Linda Sigg.  The District Court denied plaintiff's motion.  On July 20, 2004, the District Court order that a certificate of deposit in the amount of $333,451.01, bearing the names of John, Linda and Mitch Sigg, be cashed.  On August 6, 2004, the District Court ordered that $250,000 of the proceeds be paid to Linda Sigg and that the remainder be given to the clerk of the District Court.

On August 27, 2004, Mitch's attorney sent a letter to the District Court complaining of Doering's ex parte communications.  On September 1, 2004, Judge Brewster recused himself and the District Court appointed Chief Judge C. Fred Lorentz to the case.  On September 10, 2004, an attorney for A.G. Edwards & Sons sent a letter to Doering demanding repayment of the $250,000 given to Linda Sigg from the CD proceeds.  Doering ignored this demand.  On September 13, 2004, Casebeer requested that the District Court withdraw the bench warrant for plaintiff.  The District Court denied the request. Thereafter, plaintiff appeared at the courthouse to answer the bench warrant.  The sheriff fingerprinted

plaintiff, but plaintiff does not know if he was formally arrested.[3]

On September 27, 2004, Mitch's attorney sent a letter to Judge Lorentz summarizing Mitch's involvement in the case. On December 2, 2004, Casebeer sent a letter to Judge Lorentz summarizing the case. On December 9, 2004, Casebeer filed a motion to set aside the bench warrant for plaintiff. According to the records of the District Court, the District Court granted the motion and released plaintiff, though he was never incarcerated. The same day, Judge Lorentz assigned C. David Newberry as special master to oversee the financial aspects of the divorce. The District Court ordered that the remainder of the CD cashed on July 20, 2004, be used to pay Newberry's fees.

From March 10 until October 31, 2005, Linda and Mitch Sigg filed all pleadings in the divorce proceeding.[4] Plaintiff twice attempted to file an answer and cross-petition for equitable division of the marital assets, but the District Court denied his attempts.[5]

On July 29, 2005, plaintiff sent letters to clients of Sigg Auto Parts requesting that they stop doing business with Sigg Auto Parts because Linda Sigg had been stealing from the company and trading new parts for various goods and services from other companies. In the summer of 2005, plaintiff filed with the Kansas Disciplinary Administrator a complaint against Doering and his former attorneys. On August 26, 2005, the Disciplinary Administrator responded that plaintiff's complaints were dismissed as being without merit. On October 3, 2005, Doering filed a motion for a hearing on plaintiff's actions. The District Court ignored the motion. Later that month, Casebeer told plaintiff that

---

[3]     Casebeer filed a habeas corpus petition to make it appear as though plaintiff had been arrested and released.

[4]     Plaintiff's implication appears to be that for some unknown reason, he did not file any pleadings in the divorce proceeding during this time.

[5]     Plaintiff does not allege when or how he made such attempts.

the District Court's handling of his divorce was "criminal," and that the proceeding was "the biggest theft ring he had ever seen."

On November 1, 2005, Casebeer filed a motion to withdraw as plaintiff's attorney. Judge Lorentz granted the motion and gave plaintiff 30 days to obtain new counsel. Judge Lorentz also ordered plaintiff to turn over his financial statements. At the same time, Mitch's attorney filed a motion to withdraw, which the District Court granted. On December 9, 2005, Judge Innes[6] ordered the divorce proceeding into mediation. He immediately withdrew the order upon learning of the prior lawsuit in which Doering represented plaintiff.

On February 14, 2006, plaintiff retained Steven Blaylock and Harry Najim to represent him. He paid $40,000 as a retainer fee. In early March of 2006, plaintiff met with Allen County District Attorney Jerry Hathaway regarding the prior lawsuit in which Doering had represented plaintiff without his knowledge. Hathaway told plaintiff to "take his problems elsewhere, or to another county." Plaintiff then met with Allen County Sheriff Tom Williams regarding the prior lawsuit. Sheriff Williams said to plaintiff, "What do you want to go and get all these lawyers and judges in trouble for?" On April 26, 2006, plaintiff faxed a letter to the District Court stating that he had not signed interrogatories purportedly signed by him in the prior lawsuit. The District Court ignored the letter.

On March 16, 2006, Doering attempted to subpoena the Kansas Department of Labor for the financial reports of John, Linda and Mitch Sigg.[7] On March 17, 2006, plaintiff's attorneys filed a motion to bifurcate the proceeding and grant a decree of divorce to plaintiff. On March 20, 2006,

---

[6]     The complaint does not reveal Judge Innes' first name or when he was appointed to the case.

[7]     Doering withdrew the motion on March 28, 2006.

Doering filed a motion for an order for plaintiff to show cause why he should not be held in contempt for disposing of marital assets. Plaintiff had not disposed of any marital assets, but Linda Sigg had done so.

On May 8, 2006, the District Court ordered that an Oppenheimer Fund certificate of deposit in the amount of $137,000, bearing the names of John, Linda and Mitch Sigg, be cashed. The District Court sought plaintiff's consent to give $100,000 of the proceeds to Newberry, allowing plaintiff to keep $37,000. Plaintiff refused and the District Court ordered that the entire $137,000 be given to Newberry.

That same day, while entering the district courthouse for a hearing, plaintiff had a brief conversation with Prauser (Linda Sigg's second attorney). Prauser then entered the courthouse and spoke with Doering, who left the courthouse, walking back outside so that he could enter the courthouse with plaintiff. Doering then used his briefcase to hide his hand as he flipped off plaintiff. Plaintiff responded by calling Doering a thief. Doering then kicked plaintiff, and plaintiff put his hands on Doering's shoulders to shove him away. Doering subsequently brought a misdemeanor battery charge against plaintiff, and the District Court required plaintiff to pay a $1,500 bond even though he was not arrested.

In May of 2006, plaintiff called the Association for Honest Attorneys ("AHA") for assistance. Plaintiff told AHA CEO Joan Heffington that Blaylock and Najim had used the entire retainer fee in two months just by talking to each other. On May 15, 2006, Heffington informed plaintiff that she could help him sue the District Court, Linda Sigg and several attorneys.[8] On May 24, 2006, plaintiff fired

---

[8]     Plaintiff alleges that he did not discover defendants' fraudulent conduct until he spoke with Heffington in May of 2006. He further alleges that he was without knowledge of the fraudulent activity because he relied on the trustworthiness of the judicial system and believed that court officials would conduct his divorce proceeding in an ethical manner.

Blaylock and Najim by fax.

On June 6, 2006, Heffington sent letters to Doering and Judge Innes attempting to resolve the dispute prior to litigation. On July 31, 2006, plaintiff represented himself at a hearing in the District Court, argued that he had been denied due process under the Fifth Amendment and asked the District Court to deny all motions for monetary judgments set for hearing that day. The Court did not address the motions. At the hearing, Najim withdrew as plaintiff's counsel. Judge Innes ordered Najim to release plaintiff's legal files to Heffington upon request of plaintiff. Prior to releasing plaintiff's legal files, Najim redacted numerous items and charged plaintiff more than $3,000 for the time spent doing so. Upon receiving plaintiff's legal files, Heffington discovered that sexually explicit photos of Doering and Linda Sigg were missing.

On August 10, 2006, plaintiff appeared in District Court on the misdemeanor battery charge, but Doering and the judge did not appear. The District Court continued the matter. On September 13, 2006, Doering filed a motion to continue a hearing set for the next day, September 14, without notifying plaintiff. Plaintiff alleges that Doering's actions constituted an ethical violation.

On October 11, 2006, plaintiff filed this action under 42 U.S.C. § 1983 and Kansas common law alleging that defendants collectively (1) deprived him of property without due process of law in violation of the Fourteenth Amendment (Count I);[9] (2) conspired to deprive him of property (Count II);[10]

_____

[9]    Plaintiff purports to bring his procedural due process claim under the Fifth Amendment, as incorporated to the States through the Fourteenth Amendment. The due process clause of the Fifth Amendment applies to actions by the federal government. See Parnisi v. Colo. State Hosp., 992 F.2d 1223 (table), No. 92-1368, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993). Plaintiff, however, has alleged no federal action in this case. Because the Fourteenth Amendment contains its own due process clause applicable to the States, it is not necessary that the due process clause of the Fifth Amendment be incorporated to the States through the Fourteenth Amendment. Plaintiff's due process claim complaining only of state action is properly considered under the Fourteenth Amendment. See

(continued...)

(3) fraudulently conducted his divorce proceedings in violation of Kansas common law (Count III); and

(4) intentionally inflicted emotional distress in violation of Kansas common law (Count IV).  Plaintiff

seeks money damages on all claims, as well as injunctive relief on his claim for intentional infliction

of emotional distress.

**Analysis**

**I.     Plaintiff's Claims Against The District Court Of Allen County**

Plaintiff alleges that the District Court is liable (1) under Section 1983 for depriving him of

property without due process of law in violation of the Fourteenth Amendment, (2) under Kansas

---

[9](...continued)

San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987) (Fourteenth Amendment applies to state action; Fifth Amendment applies to federal action).

Although plaintiff does not specify that his due process claim arises under Section 1983, the Court construes his claim as such.  Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[10]     Plaintiff does not indicate whether his conspiracy claim arises under federal or state law. A civil conspiracy claim may be asserted under Section 1983 for the concerted deprivation of a constitutional right under color of state law, see Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990), and under Kansas law for the concerted commission of an actionable underlying tort, see Meyer Land & Cattle Co. v. Lincoln County Conservation Dist., 29 Kan. App.2d 746, 753, 31 P.3d 970, 976 (2001).  Here, plaintiff alleges that defendants conspired to commit both a constitutional violation and torts actionable under Kansas law.  The Court therefore construes plaintiff's conspiracy claim as arising under both Section 1983 and Kansas law.

The Court also recognizes that a civil conspiracy claim may be asserted under 42 U.S.C. § 1985(3), which prohibits conspiracies "motivated by some racial, or perhaps other class-based, invidiously discriminatory animus."  Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (internal quotations omitted).  Because plaintiff has not alleged that he belongs to a protected class, he cannot maintain a civil conspiracy claim under Section 1985.  Accordingly, the Court will not construe plaintiff's civil conspiracy claim as arising under Section 1985(3).

common law for fraud and intentional infliction of emotional distress and (3) under Section 1983 and Kansas common law for civil conspiracy.  The District Court argues that those claims are subject to dismissal under Rule 12(b)(1) because it is entitled to sovereign immunity under the Eleventh Amendment.  Plaintiff apparently concedes that the District Court is entitled to sovereign immunity.[11]

The Eleventh Amendment doctrine of sovereign immunity provides that nonconsenting states may not be sued by private individuals in federal court unless (1) the state consents to suit; (2) Congress expressly abrogates the state's immunity; or (3) the citizen sues a state official pursuant to Ex Parte Young, 209 U.S. 123 (1908).[12]  Opala v. Watt, 454 F.3d 1154, 1157 (10th Cir. 2006) (citing Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); J.B. ex rel Hart v. Valdez, 186 F.3d 1280, 1286 (10th Cir. 1999)).  Sovereign immunity bars suits against states and their agencies for monetary

---

[11]    In his response, plaintiff states as follows:

It appears that plaintiff has incorrectly named the District Court of Allen County/Kansas 31st Judicial District as a defendant in this matter, and that the proper party should be the State of Kansas, if they are not prohibited by the Eleventh Amendment.  If this court will allow an amendment to this complaint, it is plaintiff's desire to omit the District Court of Allen County/Kansas 31st Judicial District as a party and to include the State of Kansas (if they will waive immunity) as a defendant, and to add specific judges as other proper parties.

Plaintiff's Response To Motion To Dismiss By Defendant District Court Of Allen County (Doc. #11) filed October 31, 2006, at 1-2.  To the extent that plaintiff seeks to amend his complaint, he must properly submit a motion to amend.  See Fritchey v. I.N.S., 91 F.3d 159 (Table), No. 96-2014, 1996 WL 384556, at *1 (10th Cir. July 10, 1996) (pro se plaintiff's motion to amend must set forth substance of proposed amendment).  The Court notes, however, that unless waived, Eleventh Amendment immunity would also bar plaintiff's claims against the State of Kansas.  Such amendment is therefore probably futile.

[12]    In Ex Parte Young, the Supreme Court held that a state officer could be sued in federal court to prevent enforcement of an unconstitutional state law.  209 U.S. at 155-59.  For Eleventh Amendment purposes, sovereign immunity does not apply where a private party sues a state officer for prospective injunctive or declaratory relief from an ongoing violation of the Constitution or federal laws.  Robinson v. Kansas, 295 F.3d 1183, 1188 (10th Cir. 2002).

and injunctive relief, see Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998), and suits for money damages against state officials in their official capacity, see Ely v. Hill, 35 Fed. Appx. 761, 764 (10th Cir. 2002).  A valid claim of sovereign immunity strips the district court of subject matter jurisdiction.  Kikumura v. Osagie, 461 F.3d 1269, 1299 (10th Cir. 2006); Harrell v. United States, 443 F.3d 1231, 1234 (10th Cir. 2006).

Here, the District Court is an agency of the State of Kansas, see Kan. Const. art. III, §§ 1, 6 (district courts division of state judicial system), and is entitled to sovereign immunity, see Heffington v. Dist. Court of Sedgwick County, No. 05-4028-SAC, 2005 WL 1421530, at *5 (D. Kan. June 17, 2005) (claims against state district court precluded by Eleventh Amendment); Todd v. Kansas, No. 91-4099-S, 1992 WL 24438, at *1 (D. Kan. Jan. 7, 1992) (Eleventh Amendment bars claim against district court as agency of state).  Plaintiff has alleged no facts by which the Court might find that such immunity had been waived or abrogated.  Accordingly, the Court lacks subject matter jurisdiction over plaintiff's claims against the District Court and therefore sustains the motion to dismiss under Rule 12(b)(1).

## II.    Plaintiff's Claims Against Special Master Newberry

Plaintiff alleges that Special Master Newberry is liable (1) under Section 1983 for depriving him of property without due process of law in violation of the Fourteenth Amendment, (2) under Kansas common law for fraud and intentional infliction of emotional distress and (3) under Section 1983 and Kansas common law for civil conspiracy.  Plaintiff does not indicate whether he brings suit against Special Master Newberry in his official or individual capacity.  Liberally construing the complaint, the Court assumes that plaintiff asserts both official and individual capacity claims.  Special Master Newberry argues that the Court should dismiss plaintiff's official capacity claims under Rule 12(b)(1)

12

because he is entitled to sovereign immunity under the Eleventh Amendment, and that the Court should dismiss plaintiff's individual capacity claims under Rule 12(b)(6) because he is entitled to judicial immunity.  Plaintiff does not respond to these arguments.[13]

### A.   Sovereign Immunity

As noted above, sovereign immunity bars suits against states and their agencies for monetary and injunctive relief, and suits for money damages against state officials in their official capacity.  As a special master appointed by the District Court, Newberry is an officer of the District Court empowered to oversee certain aspects of the judicial process.  See K.S.A. § 60-253.  Because Special Master Newberry is a state official, plaintiff's official capacity claims against him for money damages constitute actions against the State and are barred by sovereign immunity.  See Trujillo v. Williams, 465 F.3d 1210, 1223 (10th Cir. 2006).  Plaintiff seeks no prospective relief with regard to his Fourteenth Amendment claim and, as noted above, he alleges no facts which suggest that Kansas has waived or abrogated its sovereign immunity.  Accordingly, the Court lacks subject matter jurisdiction over plaintiff's official capacity claims against Special Master Newberry.  Those claims are dismissed under Rule 12(b)(1).

### B.   Judicial Immunity

Under the doctrine of judicial immunity, state judges are absolutely immune from Section 1983 liability except for acts taken in clear absence of all jurisdiction.  See Lewis v. Mikesic, 195 Fed. Appx. 709, 710 (10th Cir. 2006) (citing Stump v. Sparkman, 435 U.S. 349, 357 (1978)).  The Tenth Circuit has extended this immunity to persons other than judges who perform judicial acts as officials of the court.

---

[13]      Plaintiff's arguments concerning qualified immunity and substantive due process are not responsive to Special Master Newberry's arguments.

Deelen v. Fairchild, No. 05-3468, 2006 WL 2507599, at *4 (10th Cir. Aug. 31, 2006) (citing Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir. 1981)).  Judicial acts are those functions normally performed by a judge where the parties deal with the judge in his or her judicial capacity.  Id., 2006 WL 2507599, at *3 (citing Stump, 435 U.S. at 362).  Judicial immunity shields court officials from individual liability, id., 2006 WL 2507599, at *4, even where the court official acts in bad faith, with malice or in furtherance of a conspiracy, Ely, 35 Fed. Appx. at 764 (citing Mireles v. Waco, 502 U.S. 9, 12 (1991)).

Here, plaintiff alleges that the District Court appointed Special Master Newberry to oversee the financial aspects of the divorce proceeding, and entered various orders for excessive payments to him. Plaintiff has not alleged that Special Master Newberry acted in clear absence of all jurisdiction.  Kansas law provides that a court may appoint a special master to preside over certain aspects of case, and that "[t]he compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties . . . as the court may direct."  K.S.A. § 60-253(a).  None of plaintiff's allegations suggest that Special Master Newberry performed functions which are not typically performed by special masters or that Special Master Newberry acted outside of his official capacity in supervising the financial aspects of the divorce and receiving compensation for such service.  Accordingly, Special Master Newberry is entitled to judicial immunity and plaintiff's general conspiracy claims are insufficient to overcome such immunity.  The Court therefore dismisses plaintiff's individual capacity claims against Special Master Newberry under Rule 12(b)(6) on the ground of judicial immunity.

## III.    Plaintiff's Claims Against Steven Doering

Plaintiff alleges that Doering is liable (1) under Section 1983 for depriving him of property without due process of law in violation of the Fourteenth Amendment, (2) under Kansas common law for fraud and intentional infliction of emotional distress and (3) under Section 1983 and Kansas common

law for civil conspiracy.

### A.    Fourteenth Amendment

Doering argues that the Court should dismiss plaintiff's Fourteenth Amendment claim because (1) the Court lacks subject matter jurisdiction under the <u>Rooker-Feldman</u> doctrine;[14] (2) the Court should abstain under <u>Younger v. Harris</u>, 401 U.S. 37 (1971); (3) Doering is a private individual who cannot be liable for violations of the Fourteenth Amendment; and (4) plaintiff has not alleged that state law remedies are inadequate.

### I.    The <u>Rooker-Feldman</u> Doctrine

Doering argues that the <u>Rooker-Feldman</u> doctrine bars plaintiff's Fourteenth Amendment claim because plaintiff seeks impermissible review of his state court divorce proceeding.  Plaintiff responds that <u>Rooker-Feldman</u> does not apply because his divorce proceeding has not become a final judgment.

The <u>Rooker-Feldman</u> doctrine prevents federal district courts from assuming jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).  State court proceedings which have not reached the end of the state courts' appeal process, however, are not barred by <u>Rooker-Feldman</u>.  <u>Chapman v. Oklahoma</u>, 472 F.3d 747, 749 (10th Cir. 2006); <u>see also</u> <u>Exxon Mobil</u>, 544 U.S. at 292 (<u>Rooker-Feldman</u> does not bar concurrent federal and state actions).

From plaintiff's complaint, it appears that the state divorce proceeding is ongoing.  <u>See</u>

---

[14]    <u>See</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983).

<u>Complaint</u> (Doc. #1) ¶¶ 13 (Doering continues to represent Linda Sigg), 97 (hearing in proceeding continued as recently as September 13, 2006).  Viewing the allegations of the complaint in a light most favorable to plaintiff, the state divorce proceedings have not become final and <u>Rooker-Feldman</u> does not apply.  <u>See</u> <u>Guttman v. Khalsa</u>, 446 F.3d 1027, 1032 (10th Cir. 2006) (<u>Rooker-Feldman</u> applies only to federal actions filed after state proceedings are final).  The Court therefore overrules Doering's motion to dismiss plaintiff's Fourteenth Amendment claim on the ground that it is barred by the <u>Rooker-Feldman</u> doctrine.

ii.   **The <u>Younger</u> Doctrine**

Doering argues that the Court should abstain from deciding plaintiff's Fourteenth Amendment claim under <u>Younger</u> because plaintiff's federal action attempts to interfere with an ongoing state divorce proceeding.  <u>Younger</u> dictates that a federal district court abstain from exercising jurisdiction when (1) a state criminal, civil or administrative proceeding is ongoing; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests.  <u>Amanatullah v. Colo. Bd. of Med. Exam'rs</u>, 187 F.3d 1160, 1163 (10th Cir. 1999).  Absent extraordinary circumstances, abstention is mandatory when these elements are satisfied.  <u>Id.</u>  Plaintiff does not challenge the basic <u>Younger</u> elements, but responds that extraordinary circumstances exist because the District Court is conducting the divorce proceeding in bad faith to harass him and the divorce proceeding threatens him with irreparable harm.

The Court need not abstain under <u>Younger</u> in cases of proven harassment or where state proceedings are undertaken in bad faith.  <u>See</u> <u>Weitzel v. Div. of Occupational & Prof'l Licensing</u>, 240 F.3d 871, 876 (10th Cir. 2001).  The Court should consider whether the state court proceeding is "conducted in such a way as to constitute harassment and an abuse of [legal] discretion."  <u>Id.</u>  It is the

plaintiff's "heavy burden" to overcome <u>Younger</u> by setting forth more than mere allegations of bad faith or harassment.  <u>Phelps v. Hamilton</u>, 122 F.3d 885, 889 (10th Cir. 1997).  In evaluating bad faith, the Tenth Circuit has created a burden-shifting scheme by which plaintiff assumes the initial burden of demonstrating bad faith and harassment with evidence beyond the pleadings which is sufficient to create a presumption of bad faith; once plaintiff makes this initial showing, the burden shifts to defendant to rebut the presumption of bad faith.  <u>See</u> <u>id.</u> at 889-90.  Because this burden-shifting scheme requires plaintiff to come forth with proof beyond the pleadings, the Court must, at a minimum, provide plaintiff an opportunity to present evidence.  <u>Id.</u> at 890 n.4.

Here, plaintiff's allegations suggest bad faith because they allege that the District Court and its officials engaged in a conspiracy with private parties to wrongfully deprive plaintiff of property.  <u>See</u> <u>Stein v. Legal Adver. Comm. of the Disciplinary Bd.</u>, 272 F. Supp.2d 1260, 1274 (D.N.M. 2003) (overcoming state court's presumption of honesty and integrity constitutes exceptional circumstances under <u>Younger</u>).  Without affording plaintiff the opportunity to present evidence in support of his allegations, the Court cannot conclude as a matter of law that plaintiff cannot satisfy the level of bad faith required to overcome <u>Younger</u>.[15]  The Court therefore overrules Doering's motion to dismiss plaintiff's Fourteenth Amendment claim under <u>Younger</u>.

### iii.    Doering As A Private Individual

Doering argues that he is a private individual who cannot be held liable under Section 1983, which requires wrongful action under color of state law.  Plaintiff responds that Doering acted under of color of state law in violating his Fourteenth Amendment rights.

---

[15]    Because the Court finds that plaintiff has not stated a claim under the Fourteenth Amendment, however, it is not necessary to provide plaintiff an opportunity to present evidence of bad faith and harassment by defendants.

Section 1983 prohibits certain wrongful conduct taken under color of state, which is defined as "the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Pitts v. Turner & Boisseau Chartered, 850 F.2d 650, 653 (10th Cir. 1988). Similarly, a valid claim for deprivation of property in violation of the Fourteenth Amendment requires allegations of deliberate conduct by state actors. Hall, 935 F.2d at 1113. The Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982). Joint participation requires the private party to "make use of state procedures with the overt, significant assistance of state officials." Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 487 (1988). The Supreme Court has made clear that conduct which satisfies the state action requirement of the Fourteenth Amendment also constitutes "action under color of state law and will support a suit under Section 1983." Lugar, 457 U.S. at 935.

Here, plaintiff alleges that defendants, including Doering, conspired with District Court judges to deprive him of assets without due process of law. When taken as true, the complaint sufficiently states that Doering became a state actor through joint participation with state officials in the violation of plaintiff's Fourteenth Amendment rights. Because Doering is alleged to be a state actor under the Fourteenth Amendment, it necessarily follows that for purposes of this motion, he acted under color of state law for purposes of Section 1983. The Court therefore overrules Doering's motion to dismiss plaintiff's Fourteenth Amendment claim on the ground that he was not acting under color of state law.

### iv.   Inadequate Post-Deprivation Remedies

Doering argues that plaintiff has failed to state a claim under the Fourteenth Amendment

because he has not alleged that existing state law remedies are inadequate.  Plaintiff responds that the Court should liberally construe his complaint to include such allegation because the inadequacy of state remedies is obvious to a reasonable person.

It is well established that random and unauthorized acts of government employees do not constitute procedural due process violations where adequate post-deprivation remedies exist under state law.  Palmer v. Unified Gov't of Wyandotte County/Kansas City, Kan., 72 F. Supp.2d 1237, 1252 (D. Kan. 1999) (citing Zinermon v. Burch, 494 U.S. 113, 128 (1990)); see also Parratt v. Taylor, 451 U.S. 527, 538 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986) (normal pre-deprivation notice and opportunity to be heard pretermitted where State provides adequate post-deprivation remedy).  Post-deprivation remedies, however, do not cure official conduct pursuant to an established or *de facto* policy, procedure or custom.  Gillihan v. Shillinger, 872 F.2d 935, 939 (10th Cir. 1989) (citing Logan, 455 U.S. at 436).  To state a procedural due process claim under Section 1983 where defendants do not act in conformity with official policy, procedure or custom, plaintiff must plead the inadequacy or unavailability of post-deprivation remedies.  Montana v. Hargett, 84 Fed. Appx. 15, 17 (10th Cir. 2003) (citing Durre v. Dempsey, 869 F.2d 543, 548 (10th Cir. 1989)).

Here, plaintiff has not alleged that defendants acted in conformity with any policy, procedure or custom.  Indeed, plaintiff alleges that defendants' actions, including ex parte communications and fraud, violated applicable laws and codes of ethical conduct.  Under these circumstances, plaintiff must allege that he had no adequate post-deprivation remedy for defendants' random and unauthorized acts.[16] Because plaintiff has made no such allegation, he has failed to state a procedural due process claim

---

[16]     Plaintiff's *pro se* status does not relieve him of the obligation to make such allegation. See Montana, 84 Fed. Appx. at 17 (*pro se* plaintiff must allege lack of adequate state remedy to state procedural due process claim under Section 1983); Durre, 869 F.2d at 548 (same).

under Section 1983, and the Court sustains Doering's motion to dismiss plaintiff's Fourteenth Amendment due process claim under Rule 12(b)(6).

### B.    Fraud

Doering argues that plaintiff's state law fraud claim should be dismissed under Rule 12(b)(6) because (1) he enjoys absolute privilege, (2) the claim is barred by the two-year statute of limitations, (3) plaintiff has not plead the claim with requisite particularity and (4) plaintiff has not alleged facts necessary to find justifiable reliance.

### I.    Absolute Privilege

Doering argues that the Court should dismiss plaintiff's fraud claim because his actions in connection with the divorce proceeding are absolutely privileged under Kansas law.  Plaintiff does not respond to this argument.[17]  The Kansas Supreme Court has recognized that

> Judicial proceedings are absolutely privileged communications, and statements in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions.

Froelich v. Adair, 213 Kan. 357, 360, 516 P.2d 993, 997 (1973); see also Clear Water Truck Co. v. M. Bruenger & Co., 214 Kan. 139, 141, 519 P.2d 682, 685 (1974) (absolute immunity in defamation actions long recognized).   Froelich and Clear Water recognize absolute privilege as a defense against defamation and certain invasion of privacy actions, but plaintiff has not asserted any such claims. Doering makes no argument for the extension of absolute privilege to additional causes of action such as fraud.  The Court therefore overrules Doering's motion to dismiss plaintiff's fraud claim on the ground of absolute privilege.

---

[17]    Plaintiff's arguments concerning attorney-client privilege are not responsive to Doering's argument.

### ii.      Statute Of Limitations

Doering argues that the Court should dismiss plaintiff's fraud claim because the claim is barred by the two-year statute of limitations provided under K.S.A. § 60-513(a)(3).  Plaintiff responds that he did not discover the fraud until May of 2006, effectively tolling the statute of limitations.

Kansas law provides that an action for fraud shall be brought within two years, "but the cause of action shall not be deemed to have accrued until the fraud is discovered."  K.S.A. § 60-513(a)(3). Under Kansas law, a fraud is "discovered" at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered.  <u>Waite v. Adler</u>, 239 Kan. 1, 6, 716 P.2d 524, 527 (1986).  Constructive notice of fraud is sufficient to set the statute of limitations in motion, <u>see</u> <u>Sutton v. Sutton</u>, 34 Kan. App.2d 357, 362, 118 P.3d 700, 703 (2005), but mere suspicion of wrongdoing will not suffice where plaintiff is lulled into confidence by the offending party, <u>see</u> <u>Price v. Grimes</u>, 234 Kan. 898, 900, 677 P.2d 969, 972 (1989).

Here, plaintiff alleges that he did not discover defendants' fraudulent conduct until he spoke with Heffington in May of 2006.  He further alleges that he was without knowledge of the fraudulent activity because he relied on the trustworthiness of the judicial system and believed that court officials would conduct his divorce proceeding in an ethical manner.  Taken as true, these allegations support tolling of the statute of limitations under the discovery rule of K.S.A. § 60-513(a)(3) sufficient to survive the motion to dismiss.  Accordingly, the Court overrules Doering's motion to dismiss plaintiff's fraud claim on the ground that it is barred by the two-year statute of limitations.

### iii.      Particularity Of Pleading

Doering argues that the Court should dismiss plaintiff's fraud claim because plaintiff has not pled his fraud claim with particularity as required by Rule 9(b).  Plaintiff responds that "[n]o

reasonable person would agree that [he] did not state fraud/conspiracy with particularity in the facts alleged, which include the overt acts of the defendants," and that the facts constituting fraud in this case are "obvious" to any reasonable person who can "connect the dots."

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." For purposes of Rule 9(b), particularity includes the time, place and contents of the fraudulent conduct, as well as the identities of the wrongdoers. See Barnhardt v. OXY USA, Inc., No. 93-1060-PFK, 1994 WL 476356, at *9 (D. Kan. Aug. 23, 1994).

Here, plaintiff's complaint states that

The overt acts of fraud and collusion in this matter which were engaged in by the defendants to deprive John Sigg of his assets include, but are not limited to: [1] ordering John Sigg's C.D.'s to be cashed and paid to the court with a proper basis for doing so, [2] the court granting Linda Sigg control of Sigg Auto Parts (a sole proprietorship owned by Mr. Sigg) without a proper basis for doing so, [3] funneling money to a special master without a proper basis for doing so, [4] Mr. Sigg's lawyers firing themselves, [5] the court ordering a bench warrant prior to service on John Sigg, [6] ex parte communications on the part of all defendants, as well as meetings, telephone calls, e-mails, correspondence, "mental processes" and other communications to illegally dispose of Mr. Sigg's income and assets among the defendants.

The first five allegations are stated with sufficient particularity to allow for the identification of the time, place and contents of the fraudulent conduct, but these allegations identify as wrongdoers only the District Court and plaintiff's attorneys. The generic allegation that all defendants engaged in various forms of deliberation as part of a conspiracy to deprive plaintiff of assets is insufficient to state with particularity a fraud claim against Doering because it does not identify the time or place of the alleged wrongdoing. The Court therefore sustains Doering's motion to dismiss plaintiff's fraud claim under Rule 12(b)(6) on the ground that plaintiff has failed to plead such claim with particularity as required by Rule 9(b).

### iv.      Justifiable Reliance

Doering argues that the Court should dismiss plaintiff's fraud claim because plaintiff's allegations do not establish justifiable reliance, a basic element of plaintiff's fraud claim.  Plaintiff responds that the Court should not dismiss his claim because his complaint should be liberally construed.

To establish fraud under Kansas law, plaintiff must show his justifiable reliance on disputed communications and resulting detriment.  See Nichols v. Kan. Political Action Comm., 270 Kan. 37, 53, 11 P.3d 1134, 1146 (2000) (elementary rule of law of fraud requires plaintiff to show that he was deceived); see also Slaymaker v. Westgate State Bank, 241 Kan. 525, 529, 739 P.2d 444, 449 (1987) (in fraud by commission claim, plaintiff must show justifiable reliance on defendant's affirmative misrepresentations).   Here, plaintiff alleges that he was fraudulently deprived of assets through defendants' overt acts and misrepresentations.  Even liberally construing the complaint, however, plaintiff does not allege that he relied on any misrepresentations by defendants.  Without such allegation, plaintiff does not state a claim of fraud under Kansas law.  The Court therefore sustains Doering's motion to dismiss plaintiff's fraud claim under Rule 12(b)(6) on the ground that plaintiff has not alleged justifiable reliance.

### C.      Intentional Infliction Of Emotional Distress

Plaintiff generally alleges that defendants' conduct during the course of the divorce proceeding caused him severe emotional distress and bodily harm.  Plaintiff does not point to any particular act which triggered his injury.  Doering argues that the Court should dismiss plaintiff's state law claim for intentional infliction of emotional distress under Rule 12(b)(6) because the claim is barred by the two-

year statute of limitations provided under K.S.A. § 60-513(a)(4).[18]  Plaintiff does not respond to this argument.

Kansas law provides that an action for intentional infliction of emotional distress shall be brought within two years.  See K.S.A. § 60-513(a)(4); Hallam v. Mercy Health Ctr. of Manhattan, Inc., 278 Kan. 339, 346, 97 P.3d 492, 497 (2004).  Under Kansas law, a claim for intentional infliction of emotional distress accrues on the date when the injury was incurred and the emotional impact was felt. Cline v. S. Star Centr. Gas Pipeline, Inc., 191 Fed. Appx. 822, 827 (10th Cir. 2006).  Because plaintiff filed his complaint on October 11, 2006, his claim is therefore limited to injuries incurred from defendants' conduct since October 11, 2004 (i.e. two years preceding the date on which plaintiff filed his complaint).  Here, plaintiff does not allege any specific injury which he suffered after October 11, 2004.  Instead, plaintiff generally alleges that defendants caused him to suffer severe emotional distress by their conduct throughout the five-year divorce proceeding from January of 2002 to the present.  See, e.g., Complaint (Doc. #1) ¶ 88 ("The mental anguish and emotional distress of his divorce dragging out five years had taken its toll on his health, and he felt he was dying a slow death.")[19]  To the extent that plaintiff's intentional infliction of emotional distress claim rests on conduct and injuries which occurred

---

[18]        Doering also argues that he is entitled to absolute privilege on this claim.  As noted above, the Court rejects this argument.

[19]        The complaint clearly indicates that plaintiff was first injured by defendants' conduct prior to October 11, 2004.  Specifically, Plaintiff alleges that by May of 2004, the conduct of defendants had caused him "increased anxiety and frustration" leading to "poor health and heart problems."  Complaint (Doc. #1) ¶ 49. Although paragraph 49 does not specify when exactly plaintiff began to experience anxiety, frustration and health problems, the complaint is arranged in chronological order, and plaintiff's allegation of mental and physical distress falls between allegations concerning the District Court's issuance of a bench warrant in April of 2004, paragraphs 46-48, and its denial of plaintiff's motion to withdraw funds and for sanctions in May of 2004, paragraph 50. From the allegations of the complaint, the Court finds that plaintiff alleges injuries arising from defendants' intentional infliction of emotional distress which were manifest no later than May of 2004.

prior to October 11, 2004, the claim is barred by the two-year statute of limitations under K.S.A. § 60-513(a)(4).  Liberally construing the complaint, however, plaintiff has alleged conduct occurring after October 11, 2004, which caused him severe emotional distress.[20]  These allegations are sufficient to survive the motion to dismiss on the statute of limitations ground.  Accordingly, the Court sustains in part Doering's motion to dismiss plaintiff's intentional infliction of emotional distress claim under Rule 12(b)(6) to the extent that plaintiff relies on conduct and injuries which occurred prior to October 11, 2004.

### D.    Civil Conspiracy

Doering argues that the Court should dismiss plaintiff's conspiracy claim under Rule 12(b)(6) because he cannot establish the underlying wrongful conduct necessary to sustain the claim.  Plaintiff does not meaningfully respond to this argument.

To state a valid civil conspiracy claim under Section 1983, plaintiff must allege an underlying constitutional deprivation.  See Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).  Similarly, a civil conspiracy claim under Kansas law must be based on an actionable underlying tort.  See Meyer Land & Cattle Co. v. Lincoln County Conservation Dist., 29 Kan. App.2d 746, 753, 31 P.3d 970, 976 (2001).

As noted above, the Court has dismissed plaintiff's Fourteenth Amendment claim, and plaintiff has therefore failed to state a civil conspiracy claim under Section 1983.  Although the Court has also dismissed most of plaintiff's state law claims, his civil conspiracy claim under Kansas law remains

---

[20]     For example, plaintiff alleges that in May of 2006, Doering and Prauser devised a plan to provoke him to anger by antagonizing and battering him.  See Complaint (Doc. #1) ¶¶ 85-87. Prauser does not challenge the sufficiency of these allegations to state a claim for intentional infliction of emotional distress under Kansas law.

viable to the extent that the complaint alleges a claim of intentional infliction of emotional distress.  The Court therefore dismisses all plaintiff's civil conspiracy claims under Rule 12(b)(6) except for his civil conspiracy claim predicated on intentional infliction of emotional distress claim under Kansas law.

### IV.    Plaintiff's Claims Against Linda Sigg

Plaintiff alleges that Linda Sigg is liable (1) under Section 1983 for depriving him of property without due process of law in violation of the Fourteenth Amendment, (2) under Kansas common law for fraud and intentional infliction of emotional distress and (3) under Section 1983 and Kansas common law for civil conspiracy.  Linda Sigg argues that the Court should dismiss plaintiff's Fourteenth Amendment claim under Rule 12(b)(6) because she was not a state actor under the Fourteenth Amendment.  Plaintiff responds that Linda Sigg acted under of color of state law in violating his Fourteenth Amendment rights.

Plaintiff's general allegations against Linda Sigg are indistinguishable from those against Doering, including the allegation that Linda Sigg collectively conspired with District Court judges to deprive him of assets without due process of law.  As noted above, plaintiff's allegations are sufficient to allege that otherwise private defendants, including Linda Sigg, became state actors for purposes of the Fourteenth Amendment through joint participation with state officials to deprive plaintiff of property.  See Lugar, 457 U.S. at 941.  The Court therefore overrules Linda Sigg's motion to dismiss plaintiff's Fourteenth Amendment claim on the ground that she was not a state actor.

Although the complaint sufficiently alleges that Linda Sigg was a state actor, the defects in plaintiff's claims against Doering, described above, appear to exist with respect to his claims against Linda Sigg as well.  Accordingly, on or before **April 9, 2007**, plaintiff shall show good cause in writing

why the Court should not dismiss each of his apparently defective claims against Linda Sigg for failure to state a claim on which relief can be granted.

**V.      Plaintiff's Claims Against Larry Prauser**

Plaintiff alleges that Larry Prauser is liable (1) under Section 1983 for depriving him of property without due process of law in violation of the Fourteenth Amendment, (2) under Kansas common law for fraud and intentional infliction of emotional distress and (3) under Section 1983 and Kansas common law for civil conspiracy.  Prauser argues that the Court should dismiss plaintiff's claims under Rule 12(b)(6) because (1) he was not a state actor for purposes of the Fourteenth Amendment and (2) plaintiff has not specifically alleged his involvement in the wrongful deprivation of property.

As noted above, plaintiff's allegations of joint participation sufficiently allege that all defendants are state actors for purposes of the due process claim.  The Court therefore overrules Prauser's motion to dismiss plaintiff's Fourteenth Amendment claim on the ground that he was not a state actor.

With regard to Prauser's involvement in the deprivation of property, the complaint alleges that defendants collectively deprived plaintiff of property through manipulation of the divorce proceeding. To the extent that Prauser is involved in the divorce proceeding, the Court presumes that plaintiff's allegations regarding defendants' collective action include allegations against Prauser.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990) (for motion to dismiss, Court presumes that plaintiff's allegations embrace the specific facts necessary to support them).  Thus, plaintiff need not specify Prauser's precise role in the property deprivation, see Finney v. Metzger, No. 99-4144-RDR, 2000 WL 1478422, at *1 (D. Kan. July 17, 2000) (complaint survives motion to dismiss by alleging collective action by defendants without specifying particular defendant's role), and collective allegations will suffice to allege Prauser's involvement for purposes of plaintiff's claims.  Accordingly, the Court

overrules Prauser's motion to dismiss plaintiff's claims on the ground that the complaint does not specifically allege Prauser's involvement in the deprivation of plaintiff's property.

Although the complaint sufficiently alleges that Prauser was a state actor and was involved in the deprivation of plaintiff's property, the defects in plaintiff's claims against Doering, described above, appear to exist with respect to his claims against Prauser as well.  Accordingly, on or before **April 9, 2007**, plaintiff shall show good cause in writing why the Court should not dismiss each of his apparently defective claims against Prauser for failure to state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Of Defendant The District Court Of Allen County (Doc. #2) filed October 13, 2006 be and hereby is **SUSTAINED**.  Plaintiff's claims against the District Court of Allen County, Kansas, 31st Judicial District are dismissed.

**IT IS FURTHER ORDERED** that Defendant Linda Sigg's Motion To Dismiss For Failure to State A Claim And For Lack Of Subject Matter Jurisdiction (Doc. #5) filed October 30, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED that on or before April 9, 2007, plaintiff shall show good cause in writing why the Court should not dismiss each of his apparently defective claims against Linda Sigg for failure to state a claim on which relief can be granted.**

**IT IS FURTHER ORDERED** that Defendant Steven Doering's Motion To Dismiss (Doc. #20) filed November 25, 2006 be and hereby is **SUSTAINED IN PART**.  Plaintiff's claims against Doering for violation of the Fourteenth Amendment and fraud, and for civil conspiracy based on those claims, are dismissed.  Plaintiff's claim against Doering for intentional infliction of emotional distress is dismissed to the extent that such claim relies on conduct and injuries which occurred prior to October 11, 2004.  Plaintiff's claim for intentional infliction of emotional distress based on conduct

28

which occurred on or after October 11, 2004, and his claim for civil conspiracy based on intentional infliction of emotional distress remain in the case.

**IT IS FURTHER ORDERED** that <u>Defendant C. David Newberry's Motion To Dismiss</u> (Doc. #22) filed November 15, 2006 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that <u>Defendant Prauser's Motion To Dismiss Plaintiff's Claim For Failure To State A Claim Upon Which Relief Can Be Granted</u> (Doc. #35) filed January 22, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED that on or before April 9, 2007, plaintiff shall show good cause in writing why the Court should not dismiss each of his apparently defective claims against Prauser for failure to state a claim on which relief can be granted.**

Dated this 23rd day of March, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

29